# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 5, 2007 Session

## STATE OF TENNESSEE v. JOHN DUPREE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-04929     W. Otis Higgs, Judge**

---

**No. W2006-01645-CCA-R3-CD  - Filed September 24, 2007**

---

The defendant, John Dupree, appeals the trial court's judgment denying any form of alternative sentence. The defendant argues that the trial court erred in failing to allow him to call witnesses during the sentencing hearing and in denying an alternative sentence. After careful review, we conclude that no reversible error occurred during the sentencing hearing and that the denial of alternative sentencing was proper. We affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Marty M. McAfee and Vicki M. Carriker, Memphis, Tennessee, for the appellant, John Dupree.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves the defendant driving under the influence of prescription drugs, namely Adavant, Vicodin, and Paxil, and the resulting death of Stanley Masek. These drugs were prescribed because the defendant was suffering from depression. They made him "very sleepy, mush-mouthed, and inattentive." As a result of driving under the influence of these medications, the defendant almost struck a vehicle at a red light and then pulled into the curb lane where he struck the victim, who was in a motorized wheelchair. The victim later died as a result of his injuries.

The defendant was charged and pled guilty to vehicular homicide, a Class C felony. As part of the plea agreement, the defendant agreed to be sentenced as a Range I, standard offender to a term of three years, with the manner of service to be determined by the trial court.

The trial court held a sentencing hearing after which it determined that the manner of service would be the county workhouse and denied any alternative sentence.

The first issue raised by the defendant is that the trial judge erred in denying him the opportunity to call witnesses at the sentencing hearing. A review of the record reveals that the defendant called his wife, Cindy Dupree, who testified and was cross-examined. She informed the court that: she had been married to the defendant for thirteen years; they had one child from this marriage; she had another child at the time of their marriage; and the defendant was a good father to both children. She testified that the defendant became depressed and took prescribed medications. She also said that he worked two jobs and that he was very sorry about the victim's death. Ms. Dupree said that the defendant had problems with alcohol abuse and that, even though he still suffered from depression, he now used prayer and a church support group instead of medications. The parties divorced after the defendant's second instance of driving under the influence of his medications and his arrest. They are now attempting to reconcile. Ms. Dupree said that she has seen a change in him.

At this point, trial counsel informed the court he wished to call additional witnesses. The following colloquy occurred:

| | |
|---|---|
| THE COURT: | Well, I'm not going to argue with you. Make your argument. I don't want to hear from anybody else. |
| COUNSEL: | You do not want to hear from my other witnesses? |
| THE COURT: | No, sir. You can tell me what they're going to say. |
| COUNSEL: | Your Honor, I have people from his church group. |
| THE COURT: | Tell me what they're going to say. |
| COUNSEL: | What they're going to say is that he has tried to address this depression, and tried to address all these problems both through his activities in going through therapy and dealing with it, and through the activities imposed by this court, under the SCRAM Program. I also have a witness for them. |
| THE COURT: | Tell me what he's going to say. |
| COUNSEL: | It is she. It's a -- |
| THE COURT: | Well, just tell me. I'll take whatever you say as the gospel truth. |
| THE STATE: | Your Honor, he does have letters from all of them. |
| THE COURT: | All right. I'll take the letters. |
| COUNSEL: | And, I would also say to the court that it has been questioned, put into issue, – Let me see if I can find my letters. (Peruses file.) Here are the originals, your Honor. |
| THE COURT: | Let's mark the originals and the Presentence Report, Ms. Reporter. |
| COUNSEL: | The only thing that I would say, Your Honor, is that it has been put into issue whether he had remorse for this. |
| THE DEPUTY: | Hold on please. |

COUNSEL:            I apologize.

(Exhibit A and B were marked.)

THE COURT:          All right.  Go ahead.

COUNSEL:            It has been put into issue whether he had remorse for this, and I have three witnesses –

(An interruption was had.)

THE COURT:          I am sorry, [counsel], go ahead and make your argument, sir.

COUNSEL:            Your Honor, it's been put into issue whether he had real remorse for this.  Now, this is a man who lives his life as a Christian and addresses this, but the only thing --

THE COURT:          I'll conceive he's remorseful.  He's remorseful, he's sorry.

COUNSEL:            I submit to the court --

THE COURT:          Let's give him the benefit of it.  He's sorry that this happened; he's remorseful; he'll never do it again.

COUNSEL:            All right, sir.  Is the court now ruling that I'm not allowed to put those witnesses on?

THE COURT:          I'm telling you just tell me what they're going to say.

COUNSEL:            Ms. Miller would say that he has complied with every single requirement of this SCRAM Program; that he has shown remorse to her, as she has been watching him for, I think, it's eight and-a-half months in this program.  Not one alcohol related event.  None.  No tampering events, none, and that I've got also people from the – from his group, two of them that can say how he's grown in that group.

And, I submit to the court respectfully that under <u>Booker v. Washington</u> that these are things that you should consider before you make a decision as to sentencing.

THE COURT:          I didn't say I wouldn't consider them.  That's why I'm asking you to tell me; I don't want to hear from all these witnesses.  You tell me what they're going to say.

COUNSEL:            Okay.  One of them has come to court with him every time, Mr. Doug Owens, and he would say that he has grown in this group; that he has tried to address these problems even before he knew he could bring his marriage back together and make it reconciled.

The other man is Mr. David Whitmore, who founded this group, and he would say that he has complied with every bit of that group, and I don't know what else he would say.  I just got a few things from him before I would put them on.

But I feel like I've angered the Court by taking issue of this, and this is a case where I had to do that.

| | |
|---|---|
| THE COURT: | Sir, I will assure you that I am not angry. I simply corrected your argument that even under the influence of a prescription drug, you cannot operate a motor vehicle. |
| COUNSEL: | Your Honor, I absolutely agree with that, but I will respectfully say that this is that one in thousands of cases. I've been handling so many DUI's – When I saw a PD, they had me pick out the bad videos and the good videos to train people, and this is that one out of thousands that you should look at a little differently. And I would like the court to understand why I say that. I don't think the man knew when this incident happened, that this medication was going to affect him like it did. |
| THE COURT: | I'm not cutting you off. |
| COUNSEL: | All right. I have arguments to make. Are you now ruling that I cannot put on the witnesses? |
| THE COURT: | No sir, I've already ruled that. |
| COUNSEL: | Okay. |
| THE COURT: | So, now, whatever arguments you want to make, you can make whatever arguments you want to make about the testimony of these witnesses. Have them to stand and be introduced to the court. |
| COUNSEL: | Yes, sir, I will do that.<br>Stand up Ms. Dupree. You've already heard from her. (Replied.)<br>Mr. Owens, stand up. (Replied.)<br>Mr. Whitmore, please stand up. (Replied.)<br>And Ms. Cindy Miller, probation officer, stand up. (Replied.) |
| THE COURT: | Thank you very much. We're delighted you came today. It's a real pleasure having you here. |

We have carefully reviewed this record to discern any point that the trial judge did not take as "gospel truth" the testimony of the witnesses the defendant was prevented from calling, and we find none. It is well settled that the propriety, scope, manner, and control of the examination of the witnesses are matters within the discretion of the trial judge, which will not be interfered with in the absence of an abuse thereof. A wide discretion in this matter is necessarily left to the court. Coffee v. State, 216 S.W.2d 702, 703 (Tenn. 1948). Trial counsel is unable to point to any portion of the record where the trial court disputed anything the witnesses would testify to. It is as though their testimony was entered as stipulated testimony. The trial court expressly stated that he would consider the testimony and the written letters submitted on the defendant's behalf. We conclude that no prejudice occurred to this defendant and, therefore, no reversible error exists.

Next, we consider whether the trial court, in denying any alternative sentence, failed to review appropriate sentencing guidelines in arriving at its judgment.

It appears, upon this record, that, before determining the manner in which the defendant was to serve his three-year sentence, the trial court considered the following: the statements during the plea colloquy; the presentence report; the victim impact statement; the testimony of the defendant's wife; the stipulated testimony of Mrs. Miller, Mr. Owens, and Mr. Whitmore; and the letters written in support of the defendant from various church members.

When there is a challenge to the manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The mechanics of arriving at an appropriate sentence are spelled out in the Criminal Sentencing Reform Act of 1989. The court is required to consider (1) the evidence, if any, received at trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) the evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102(6), -103(1), (5), and -210(a), (b) (2006).

In the present case, we disagree with the defendant's contentions and conclude that the trial court looked at relevant considerations in determining whether to grant an alternative sentence. First, in considering the nature and circumstances of the offense, the trial court noted that the defendant knew the drugs he was taking affected his central nervous system and knew that he was driving under the influence of drugs. The trial court considered the extent of influence the drugs had upon the defendant, in that he was "sleepy, mush-mouthed, and inattentive." Before striking the victim, the defendant almost struck a vehicle at a red light. The trial court felt this defendant's driving was so out of control that "[p]eople across this country are scared to death about driving on the highways, because they might run into this man (the defendant) all over this country." The record supports the trial court's conclusions that the defendant was driving while under the influence of drugs, knowing he had "no business driving a vehicle."

Second, this defendant has a previous criminal record of driving under the influence and other alcohol-related offenses.

Third, the defendant's background, social history, and present condition, including physical and mental conditions, appear fair. He suffers from depression. His family considered him to be a good father and a hard worker.

Fourth, in the deterrent effect, the trial court found that "every citizen in this community should march on this courthouse and ask me for an explanation. Why on God's earth would you give this man probation with his history?" The trial court was expressing the public's concern over repeat offenders escaping jail sentences for their crimes. Driving under the influence is a misdemeanor crime that often endangers the public at large. Most offenders garner little attention until the result of their driving while under the influence results in a death. As did the trial court, we conclude that probation is not proper under these circumstances to deter this defendant and others in similar situations. This defendant has a prior offense for driving while under the influence and continued to drive under the influence after killing the victim in this case.

Next, the impact was great upon the victim's family. They lost needed financial support provided by the victim. Although handicapped, the victim was a very good provider to his family.

Finally, the trial court considered this defendant's potential for rehabilitation and treatment. The fact that this defendant continued to drive under the influence of these drugs after he killed this victim weighs so heavily against his potential for rehabilitation that the trial court's denial of any form of alternative sentence must be affirmed.

Conclusion

Accordingly, the judgment from the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE